**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

United States of America

v.                                                                Criminal No: 1:21-cr-00078-LEW

David Phillips

**Defense sentencing memorandum**

    Like a large portion of the population, David Phillips was swept up in a fervor of politically motivated misinformation about the impending apocalypse which would inevitably befall our great nation if Donald Trump were removed from office. A carefully calculated campaign of deception, often perpetrated by officials in our own government, tricked David and others into believing that our potical system had failed, and that he had to isolate and arm himself to prepare for disaster. David fell in with a group of conspiracy theorist and doomsday prepper types known as the Boogaloo boys. He became close with their charismatic leader, a man named Michael Dunn. In the political fervor surrounding the end of the Trump presidency he ended up traveling with Michael Dunn to his remote tract of land in Greenbush, Maine. He obtained weapons and ammunition to be stored at that location believing that they would  be needed once society devolved into madness. This was, of course, its own form of madness and it's how the owner of a successful paving company from Connecticut came to find himself illegally purchasing ammunition from a military supply store in rural Maine.

    David has been in custody since turning himself in on a warrant for his arrest in February 2021. He has had time to fundamentally reconsider his beliefs and recognizes today how deranged he had truly become before his arrest. David has now rejected the ideology that led him down this path of criminal activity. He has done everything he can to part ways with those involved in similar

misdeeds. During his incarceration, he has taken advantage of whatever educational opportunities he can. Given COVID-19, these have been extremely limited. David has therefore created his own community including a support and Bible study group in the pod where he is housed. We have submitted a number of letters from individuals in the pod who have participated in this group and speak highly of David as a leader and mentor.

This court now must determine what sentence to impose on David Phillips. We anticipate that the aggregate offense level will end up being 13 with a criminal history category of III. The advisory guideline sentencing range will therefore be 18 to 24 months. David has been in custody now for approximately eight months. He served that time under extremely difficult circumstances enduring repeated outbreaks of COVID-19 in the jail and suffering his own infection with the virus. We ask that the Court now to impose a term of imprisonment equal to time served so that David can be released on to supervised release and re-integrate with his community and his family.

### Guideline Factors Support a Reduced Sentence

The United States Sentencing Guidelines recognize a number of factors that may justify a downward departure in an individual defendant's sentence and many of those factors counsel in favor of reducing Brittany's sentence.

USSG § 5H1 Factors. Specific Offender Characteristics:

**§ 5H1.3 Mental and Emotional Conditions.**

Is worth considering the defendants history and upbringing as it impacts his mental and emotional condition today. As probation notes, David's youth was marked by abuse at the hands of his mother who was ultimately arrested for assaulting her. His physical abuse at the hands of his mother lead to his removal from the home and placement in foster care. David's time in foster care was marked by more abuse and mistreatment. Who is father was available to care for David but the

child welfare service would not place, David with his father because he tested positive for marijuana during drug screenings. Instead David was subjected to abuse and neglect at the hands of people he didn't know. At the age of 13, David was reunited with his father but the damage of his mother's abuse the foster care system were already done. He found himself in the juvenile justice system and was placed in a correctional school. There, he was subject to further physical abuse which ultimately led his father to fight to get him out of the program. He reunited and lived successfully and his father through his teenage years. The two became very close and, eventually, ended up working together in the oil extraction industry in Texas. In 2017, David's father disappeared and has never been heard from again. The circumstances suggest, that his father has been murdered but this has never been proved. His father's sudden and unexpected departure have been extremely difficult for David. His father is the only parental figure that ever showed him real love and he is the man who rescued David from abusive situations with his mother, the foster care system, and the juvenile correction system. David felt lost without his father it is likely this emotional trauma that led him to seek support and connection with more questionable groups, eventually leading him to the Boogaloo Boys.

**§5H1.5. Employment Record**

David has an impressive record of employment. He has always been a productive worker and, until his arrest, he operated his own paving company. He was quite successful in his business employing a crew of hard-working men who put in long hours and did good during the paving season. He was hired by large businesses and municipalities to to jobs that were too difficult or complicated for other crews. He has a history of employment in the oil industry, construction and carpentry. He will be readily employable when he is released and he hopes to restart his business once he's able to raise the money to repair or repurchase equipment and to hire his crew back on.

### §5H1.6. Family Ties and Responsibilities

David is the father to two young boys. There is currently a child welfare case pending in the Connecticut Court where David is represented by attorney Douglas Monaghan of Groton Connecticut. David remains in a relationship with the mother of the children. She used drugs during her first pregnancy and out of concerns for his child's safety, David reported this to medical professionals. This led to child welfare's intervention and the removal of the first and then second child from the couple's home. The mother is in the process of reunification and is making commendable progress. But in David's case, we understand that the court must soon determine whether parental rights will be terminated. Given his continued incarceration, David has been unable to participate in reunification efforts for nearly the entirety of 2021. We understand from Connecticut counsel that, if David continues to be incarcerated for a substantial period of time, his parental rights will likely be terminated at a hearing likely to be held in the first part of 2022.

### §5H1.8. Criminal History

David has a criminal history score of 4 and his record consists of 7 events counted for 1 point each. It is worth noting that two of those points relate to convictions for "failure to appear" which were charged when David missed court dates on other charges. Under Connecticut law it appears common to charge this misdemeanor failure to appear crime when a defendant misses a court date. Under Maine law, a person would not normally be charged with a new crime for missing court but would simply have a warrant for arrest authorized. More commonly these days, a Maine defendant would simply be notified of a new court date and the matter rescheduled. An additional history point is assessed against David for shoplifting a single power bar from a Walgreens. He also has a one point conviction for possession of a controlled substance, marijuana from 2020. Frankly, counsel was surprised to see that possession of marijuana was still a criminal offense in Connecticut

in 2020. In Maine and a growing number of jurisdictions this would not constitute any crime at all. While, the criminal history score is accurately calculated it is worth considering that the score represents criminal convictions for offenses that would not constitute crimes in Maine, and for an extremely low level shoplifting offense involving a single power bar. If these convictions were removed from David's criminal record he would have three points resulting in a criminal history category of II and a guideline range of 15 to 21 months.

**18 U.S.C. §3553(a) A Sentence that is Sufficient but not Greater Than Necessary:**

Federal law requires this court to impose a sentence that is sufficient but not greater than necessary to serve the purposes listed in §3553(a)(2). Those are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

**§3553(a)(2) The proposed sentence is sufficient but not greater than necessary to:**

(A) <u>Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:</u> The conduct here is serious and deserves significant punishment. But we must consider the circumstances of the offense. This particular conduct was an outgrowth of a very strange time in America's political history. David felt an irrational need to protect himself by obtaining guns and ammunition in some misguided belief that political order was soon to crumble and that every man had to fend for himself. In retrospect, this is a ridiculous notion but it is one that was egged on by political elites and a community of like-minded individuals who were all too receptive to the message broadcast by those in charge.

While David's actions were reprehensible, we need to understand them as a response to a particular situation. Like many others, he honestly believed that the fabric of civil society was soon to disintegrate. He has now gained an understanding that these beliefs were wrong and that he was diluted into believing lies.

(B) <u>Provide adequate deterrence to criminal conduct:</u> The proposed sentence will have a deterrent effect and that is important. David has some past runs with the law he has never actually served any period of incarceration beyond a handful of days after low level arrests. These past 10 months in custody have been quite difficult but David has taken his situation very seriously and has committed himself to ensuring that he will never again be in the position to find himself locked up. To the extent a custodial sentence will have a deterrent effect we submit that that effect is already fully realized for Mr. Phillips.

(C) <u>Protect the public from further crimes of the defendant</u>: Certainly, the months of incarceration have prevented David from harming the public with further criminal activity. There is a substantial danger to the public posed by groups of armed people, deluded by deranged political ideologies, arming themselves in an attempt to prevent a hostile takeover of America's democracy. While locking these people up will prevent them from harming the public, the more effective and more lasting public protection will come from re-educating these people, and from their own realization that their past believes were wrong. To the extend the criminal justice system can help in that endeavor, that help is much more likely to come in the form of supervision through probation and through pro social interaction with a supportive and productive community. With the help of probation, David will have those supports in place.

(D) <u>Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>: The most effective way to provide for

David's continued vocational progress, medical care and substance abuse treatment is to allow him to be in the community. There, he can take advantage of the supports offered by his family, friends, coworkers and probation. As the court is aware David has suffered COVID-19 infection while in custody and he has also suffered a serious skin infection. These are diseases that are More readily transmissible and more seriously harmful to those incarcerated than they are to the public at large. Continued incarceration will continue to jeopardize David's health and welfare. Incarceration prevents him from being employed or receiving training or education in any effective manner. David has always been a productive member of society. He can resume that productivity once he is released and there is no compelling reason to delay that release any longer.

## COVID-19 and the Conditions of Incarceration

It is clear now that vaccines, while tremendously important, have not stoped the COVID-19 pandemic. Even as we make progress against the virus, it will take years for the prison system to recover if it ever does. Obviously, the congregation of a large number of people in a confined space has the potential to increase the transmission of the virus and the potential to cause serious harm or even death to those incarcerated. But even more than that, as prisons have become more dangerous places to be locked up, they've also become more dangerous and less desirable places to work. Federal Prisons nationwide have lost tremendous numbers of staff and rehabilitative programs that were shut down during at the height of the pandemic may not have sufficient staffing or resources to re-open if and when conditions improve. These are the programs that might offer some modicum of training, education, treatment and counseling for defendants serving Federal time. These are the programs that make a prison sentence bearable and may make it less of a waste of someone's life. It is my understanding that RDAP programs, educational programs and residential reentry centers are

still not fully operational throughout the federal prison system. As NBC news has reported[1] staffing shortages throughout the federal prison system have led to inmates being locked down over the weekends when staff is less available. Prisoner suicide and homicide rates are up. While the Federal Bureau of prisons budgets for something like 20,400 correctional officers across its facilities, they have staffed only about 13,700 of those positions. To the extent that a federal prison sentence once had the potential to be some kind of rehabilitative experience, that appears to be a complete fiction at this particular moment in history.

David has spend much of his pretrial detention in 23 hour a day lockdown, either isolated from other inmates who tested positive for COVID-19 or being isolated himself during the times when he was sick with the virus. Today, jail or prison is not just an unpleasant place to spend time, it is a place that is life threateningly dangerous to the health and welfare of those inside. Facilities such as the Cumberland County Jail have suffered repeated outbreaks of COVID-19. Staff vaccination rates have not broken much above 50%. The facilities are simply not set up in a way to allow for adequate isolation of infected persons or for proper distancing among those incarcerated. There is no obligation that jail time be enjoyable, but we should at least be able to protect the physical health and safety of those incarcerated. Right now, even that basic protection is simply not possible.

While the simple guideline analysis would call for a period of additional incarceration here, it is up to this court to make the more nuanced determination as to what the appropriate resolution should be. Congress has provided guidance in 18 U.S.C. § 3582(a) as follows:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

---

[1]  Federal prisons forced to use cooks, nurses to guard inmates due to staff shortages. https://www.nbcnews.com/news/us-news/federal-prisons-forced-use-cooks-nurses-guard-inmates-due-staff-n1268138

A 1996 Sentencing Commission paper acknowledged that non-prison sentences are associated with less recidivism than prison sentences, and that non-prison, "alternatives divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties."[2]

In aggregate, the proposed sentence of time served followed by supervised release would satisfy all the purposes of sentencing and avoid many of the negative effects that a prison sentence would have. There is simply no good reason to further incarcerate David and this Court has alternatives at its disposal. Those alternatives are less traumatizing on the defendant but, more importantly, they are also more effective ways to satisfy the goals of sentencing. We have now an opportunity to use those alternatives not just as an act of mercy but as an act of justice.

December 7, 2021

/s/ Luke Rioux
Luke Rioux (9915)
Attorney for Defendant
97A Exchange St #404
Portland ME 04101
207-358-4909
luke@rdcplawyers.com

CERTIFICATE OF SERVICE

I, Luke Rioux, Esq., hereby certify that I have caused this motion to be electronically filed with CM/ECF system which will send electronic notice of this filing to:

Assistant United States Attorney Andrew McCormack

/s/ Luke Rioux

---

[2] U.S. Sentencing Commission, Staff Discussion Paper, *Sentencing Options under the Guidelines* (Nov. 1996), available at http://www.rashkind.com/alternatives/dir_00/USSC_sentencingoptions.pdf.

Luke Rioux (9915)<br>
Attorney for Defendant<br>
97A Exchange St #404<br>
Portland ME 04101<br>
207-358-4909<br>
luke@rdcplawyers.com